UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL PUTMAN,

  Plaintiff,                              Case No. 16-cv-12705

  v.                                      UNITED STATES DISTRICT COURT
                                          JUDGE
THOMAS WINN,                              GERSHWIN A. DRAIN

  Defendant.

_____/

## OPINION & ORDER DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS, DENYING A CERTIFICATE OF APPEALABILITY, & DENYING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL

### I.    Introduction

This is a habeas case brought pursuant to 28 U.S.C. § 2254. Michigan prisoner

Michael Putman ("Petitioner") was convicted of second-degree murder, two counts

of assault with intent to murder, armed robbery, and possession of a firearm during

the commission of a felony following a jury trial in the Wayne County Circuit Court.

Dkt. No. 1, pg. 15 (Pg. ID 15). He was sentenced to 25 to 50 years imprisonment on

the murder conviction, concurrent terms of 15 to 30 years imprisonment on the

assault with intent to murder and armed robbery convictions, and a consecutive term

of two years imprisonment on the felony firearm conviction in 2013. *Id.* In his pro

se petition, he raises claims concerning the oath to witnesses, the admission of police

testimony discussing an anonymous tip, the effectiveness of trial counsel, and a perceived inconsistency in the verdict. *Id.* at pgs. 5–10 (Pg. ID 5–10). For the reasons stated below, the Court denies the habeas petition. The Court also denies a certificate of appealability and denies leave to proceed in forma pauperis on appeal.

## II.     Facts and Procedural History

Petitioner's convictions arise from a robbery at a residence that resulted in the shooting of three people, one fatally, in Detroit, Michigan on May 21, 2013. Dkt. No. 11-9, pg. 7 (Pg. ID 1057). Defense counsel on direct appeal summarized the trial testimony as follows:

> Terry Craig stated that Lovanier Craig was his wife. At about 1:30 a.m. May 21, 2013 he received information from their daughter LaToya Johnson and went to a house on Wetherby. At about 8:00 that morning he identified her body to the Wayne County Medical Examiner. (T2 36-39).
>
> Donald Davie stated on May 20, 2013 he was at 8108 Wetherby with Craig, Lewis, Giddings and Appellant, whom he knew as "Nephew". Appellant had been there at about 7:00 p.m. Ten or fifteen minutes after he returned he said "Run that shit", which Davie interpreted as a slang term for a robbery. He then shot Davie in the chest using a .38 revolver. Craig got up, tried to run and inquired why Appellant shot Davie. Appellant replied "I said run all that shit" and shot Craig in the upper torso. Giddings ran toward the basement followed by Lewis. Davie then heard two more shots fired. Appellant then went upstairs, returned and opened the door. Davie heard two additional voices. Appellant then took Craig's purse, said "Come on. I got what I came for" and left. (T2 45-48, 54-60). Giddings returned from the basement and called 911. (T261-62). He was hospitalized two weeks. During that time he was shown a photo lineup, from which he identified a person other than Appellant, and later shown a second array from which he identified Appellant. (T2 62-74,132).

Allecia Wilson is an expert in forensic pathology. On May 21, 2013 she performed an autopsy on Louvanier Craig. (T2 105-108). Wilson located gunshot wounds which entered the outer part of the right upper arm, exited the inside of the right upper arm, reentered on the right side of the chest, traversed the right side of the lungs, the heart and left side of the lungs and lodged under the skin on the left side of the chest, where it was recovered. (T2 108-113). [S]he found the cause of death was the gunshot wound to the right arm and chest. The manner of death was homicide. (T2 116).

Layman Giddings stated he knew Craig from the neighborhood and attended school with Lewis and Davie. (T2 133-134). At about 11:00 p.m. May 20, 2013 he went to 8108 Wetherby to visit Craig. Lewis and Davie were already present. Appellant, whom he knew as "Mike" arrived later. (T2 134-137, 167). Appellant was talking to Craig and then held a .32 or .38 caliber handgun to Davie, said "you know what it is" and shot Davie in the chest. He saw Lewis stand and heard another shot. When Appellant turned to Craig, he got up and ran to the basement. Lewis followed. He stayed there twenty minutes before exiting. He later returned. Craig was on the floor bleeding from the mouth and unresponsive. Davie was slumped on a couch bleeding from the chest. Lewis was in the basement. Appellant was gone. He used Craig's phone to call 911. Police arrived forty minutes later. (T2 141-151, 177-183). He did not see Appellant go into anybody's pockets, drawers or purses. (T2 172). He told the 911 operator he knew nothing, left when the police arrived and did not make a statement until the next day. He identified Appellant from a photo lineup. (T2 153-159).

Steven Lewis stated he was friends with Craig and went to 8108 Wetherby to socialize with her. He knew Giddings and Davie from the neighborhood. He did not previously know Appellant. He arrived at about 11:45 p.m. Giddings and Davie were already present. Appellant was present, left and returned ten to fifteen minutes before the shooting. (T2 188-192). Lewis recalled hearing Appellant say "You know what this is." He then heard a gunshot. He and Giddings ran toward the basement. He tripped and fell on his back. Looking up he saw Appellant stand over him with a revolver and shoot him. (T2 197-202). Giddings later left the basement and called for help. (T2 203). He made a police

statement, (T2 210-219), and identified a photo of Appellant. (T2 207-209).

Detroit Police Officer Jermaine Owens stated that in the early morning hours of May 21, 2013 he and his partner, Michael Johnson, went to 8108 Wetherby on a report of a shooting. (T3 4-5). He saw an unresponsive woman laying in the doorway; a man lying on the dining room floor responsive but unable to speak, with blood near his throat and on his chest. He also heard screams from a man in the basement. (T3 6-8, 12-15). Johnson remained at the house while he canvassed the area for witnesses. (T3 10, 19). He notified homicide, who called in evidence technicians. (T3 21).

Detroit Police Officer Rick Fields is an evidence technician. (T3 23). On May 21, 2013 he arrived to process 8108 Wetherby. He found two cell phones on the living room floor and a purse on the table. He drew a sketch. (T3 24-27, 29-30). Partner Mary Gross took photographs. (T3 29). He did attempt to collect fingerprints, blood, DNA or other forensic from the house. (T3 42-51).

Detroit Police Officer Derrick Thomas arrived at 3:25 a.m. with Sergeant Mackie and Officers Bruce and Mullins. He was in charge of the scene. The decedent was still present. (T3 56-59). He did not find any weapons or casings. (T3 64). Drug paraphernalia was spread throughout the house. (T3 66). He did not direct the collection of any any fingerprints or DNA. (T3 67-68).

Detroit Police Sergeant Steven Ford was the officer in charge of the case. The phones were returned to Davie. The purse had already been handled by others, had no evidentiary value and was turned over to Craig's family. The bullet recovered by the coroner was placed on evidence and sent to the S[t]ate Police for identification and ballistics processing. (T3 85-88). He interviewed witnesses and showed them arrays which included a photograph [of] Appellant based upon an anonymous Crime Stoppers tip reporting a person named "Mike" on Central was the shooter. (T3 90-102, 129-133).

Following Appellant's arrest, he was interviewed by Ford, who was advised of his rights and gave an unsigned statement that at about 12:50 a.m. May 21, 2013 he left his house on Central and went with his

girlfriend Anna Green to her house on Bassett where he was with her, her brother Marquise, her mother and her stepfather Big Ralph. And that two of the phones in his pocket belonged to him. A third belonged to his father, but was inoperable. (T3 102-108). As to Appellant and the decedent. Ford obtained warrants to search the phone records as to cell towers, owner's information, text messages and call logs. (T3 109-110). He obtained certified records of information between January 1, 2013 and June 19, 2013, which included 911 calls at 1:42 a.m., 1:51 a.m. and 1:58 a.m. May 21, 2013 on Craig's phone, text messages sent by Appellant's phone at 3:04 a.m. and 4:28 a.m. May 21, 2013 requesting urgent assistance and various calls between Appellant's phone and his girlfriend's phone on May 20, 21, 22, 23, 15, 27, 28, 29, 2013. (T3 111-124, 135).

Detroit Police Sergeant Kenneth Gardner, an expert in cell phone forensic analysis, (T3 146-153), stated he reviewed Appellant's cell phone records and prepared a spreadsheet plotting the dates, times and locations of the calls placed by and to Appellant's phone on May 20, 21, 2013. (T3 153-156). According to his analysis, at 1:20 a.m. Appellant's phone was registered at 7735 Central, the location of cell tower 110, which is one of three towers within range of the site of the shooting but quite a distance away from Bassett Street. (T3 160-17 6). The People then rested. (T3 181-182).

For the defense, Anna Green stated that on May 21, 2013 Appellant was her boyfriend of eight months. On that date, she arrived at his home on Central at 5:00 or 6:00 p.m. She then drove him to her mother's house on Bassett. He stayed with her there until May 27, 2013. (T3 182-199).

Lenise Bradley stated that she is Green's mother. Bradley recalled seeing Green and Appellant arrive at her Bassett Street home at 12:45 a.m. May 20, 2013. She further recalled seeing them there the next morning when she left to do errands. (T4 7-14). The Defense then rested (T4 17).

Dkt. No. 11-9, pgs. 7–10 (Pg. ID 1057–60).

Following his convictions and sentencing, Petitioner filed an appeal of right with the Michigan Court of Appeals raising the same claims presented on habeas review. Dkt. No. 11-9, pg. 31 (Pg. ID 1081). The court denied relief on those claims and affirmed his convictions. *People v. Putman*, 309 Mich. App. 240 (2015); Dkt. No. 11-9 pgs. 25–30 (Pg. ID 1075–80). Petitioner filed an application for leave to appeal with the Michigan Supreme Court, which was denied in a standard order. *People v. Putman*, 868 N.W.2d 636 (2015).

Petitioner thereafter filed his federal habeas petition on July 19, 2016. Dkt. No. 1. He raises the following claims:

I.   He was denied a fair trial where witnesses were never sworn to testify under oath pursuant to MRE 603; MCL 600.1432 thereby denying him his constitutional right to due process of law and counsel was ineffective for failing to object.

II.  The prosecutor presented testimony that an anonymous tipster named him as the person responsible for the murder at issue, trial counsel was ineffective for failing to object and thus failing to protect his right to confront and cross-examine his accuser.

III. He was denied the effective assistance of counsel where trial counsel rendered assistance so ineffective that it undermined the proper functioning of the adversarial process so detrimentally that the trial cannot be relied upon as having produced a just result.

IV.  Inconsistent verdicts render the trial, conviction, and subsequent sentencing unconstitutional therefore a new trial is warranted.

*Id.* On March 10, 2018, Respondent filed an answer to the petition contending that it should be denied because certain claims are procedurally defaulted and all of the claims lack merit. Dkt. No. 10.

### III.    Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified at 28 U.S.C. § 2241 *et seq.*, sets forth the standard of review that federal courts must use when considering habeas petitions brought by prisoners challenging their state court convictions. The AEDPA provides in relevant part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d) (1996).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15–16 (2003) (per curiam) (quoting

*Williams v. Taylor*, 529 U.S. 362, 405–06 (2000)); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002).

"[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520–21 (citations omitted); *see also Williams*, 529 U.S. at 409. "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Lindh*, 521 U.S. at 333, n.7; *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam)).

The United States Supreme Court has held that "a state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief

does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)). A habeas court "must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id*. Thus, in order to obtain federal habeas relief, a state prisoner must show that the state court's rejection of a claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.; see also White v. Woodall*, 134 S. Ct. 1697, 1702 (2014). Federal judges "are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015). A habeas petitioner cannot prevail as long as it is within the "realm of possibility" that fairminded jurists could find the state court decision to be reasonable. *Woods v. Etherton*, 136 S. Ct. 1149, 1152 (2016).

Section 2254(d)(1) limits a federal court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *Williams*, 529 U.S. at 412; *see also Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009) (noting that the Supreme Court "has held on numerous occasions that it is

not 'an unreasonable application of clearly established Federal law' for a state court to decline to apply a specific legal rule that has not been squarely established by this Court") (quoting *Wright v. Van Patten*, 552 U.S. 120, 125-26 (2008) (per curiam)); *Lockyer*, 538 U.S. at 71–72. Section 2254(d) "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" *Harrington*, 562 U.S. at 100. Furthermore, it "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002); *see also Mitchell*, 540 U.S. at 16.

The requirements of "clearly established law" are to be determined solely by Supreme Court precedent. Thus, "circuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court,'" and "[i]t therefore cannot form the basis for habeas relief under AEDPA." *Parker v. Matthews*, 567 U.S. 37, 48-49 (2012) (per curiam); *see also Lopez v. Smith*, 135 S. Ct. 1, 2 (2014) (per curiam). The decisions of lower federal courts may be useful in assessing the reasonableness of the state court's decision. *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007) (citing *Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003)); *Dickens v. Jones*, 203 F. Supp. 2d 354, 359 (E.D. Mich. 2002).

Lastly, a state court's factual determinations are presumed correct on federal habeas review. 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption with clear and convincing evidence. *Warren v. Smith*, 161 F.3d 358, 360–61 (6th Cir. 1998). Habeas review is also "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

## IV. Discussion

### A. Procedural Default

Respondent contends that Petitioner's first two habeas claims are barred by procedural default due to his failure to object at trial and the Michigan Court of Appeals' denial of relief, in part, based upon that failure. Dkt. No. 10, pg. 21, 29 (Pg. ID 117, 125). On habeas review, however, federal courts "are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). The Supreme Court has explained the rationale behind such a policy: "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Lambrix*, 520 U.S. at 525. Such is the case here. The procedural issue is somewhat complex and intertwined with the substantive claims, particularly the effectiveness of trial counsel claim, and the substantive claims are more readily

decided on the merits. Accordingly, the Court need not address the procedural default issue and shall proceed to the merits of the habeas claims.

**B.    Merits**

**1.    Oath to Witnesses**

Petitioner asserts that he is entitled to habeas relief because the trial court failed to give a proper oath to witnesses in violation of Michigan law and federal due process. Dkt. No. 1, pg. 5 (Pg. ID 5). The Michigan Court of Appeals considered this claim on plain error review and denied relief. The court explained that the oath is a procedural matter and that no specific formalities are required so long as the oath "awakens the witness's conscience and impresses his or her mind with the duty to testify truthfully." Dkt. No. 11-8, pg. 58 (Pg. ID 1020). The court found that the trial court asked each witness if they promised to testify truthfully or some similar variation of that question and that each witness answered in the affirmative. *Id.* The court concluded that such conduct was sufficient to awaken the witnesses and impress upon them the duty to testify truthfully. *Id.*

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts.[1] First, to the extent that Petitioner alleges a violation of state law with respect to this issue, he is not entitled

---

[1]The Court would reach the same result under a de novo standard of review.

to habeas relief. A federal court may grant an application for writ of habeas corpus only on the ground that the petitioner is in custody in violation of the Constitution, laws, or treaties of the United States. *See* 28 U.S.C. § 2254(a). Habeas relief does not lie for perceived errors of state law. *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991). State courts are the final arbiters of state law and federal courts will not intervene in such matters. *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987); *see also Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting on habeas review."); *Sanford v. Yukins*, 288 F.3d 855, 860 (6th Cir. 2002). Petitioner is thus not entitled to habeas relief based upon a perceived violation of Michigan law concerning the oath given to witnesses at trial.

Second, Petitioner fails to establish a federal constitutional violation. The Sixth Amendment to the United States Constitution provides, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him. . . ." U.S. Const. amend. VI. While the Sixth Amendment protects a criminal defendant's right to cross-examine all adverse witnesses, there is no constitutional provision or Supreme Court precedent requiring that witnesses be sworn in order to comply with the Confrontation Clause or to otherwise satisfy due process. *See U.S. v. Ward*, 989 F.2d 1015, 1019 (9th Cir. 1992); *Aguilar v*

*Stovall*, No. 08-10353, 2009 WL 2447412, at \*8–10 (E.D. Mich. Aug. 7, 2009) (denying habeas relief on similar claims where no oath was given to witness); *see also Elswick v. Parke*, No. 87-6742, 1988 WL 117742, at \*4 (6th Cir. Nov. 7, 1988). Petitioner thus fails to state a claim upon which habeas relief may be granted as to this issue. Moreover, even if he states a claim, he cannot prevail. As explained by the Michigan Court of Appeals, the trial court did ask the witnesses if they promised to testify truthfully and they responded in the affirmative. Such an oath aor affirmation was sufficient to protect Petitioner's rights and the truth-finding process. Habeas relief is not warranted on this claim.

### 2. Admission of Anonymous Tip Testimony

Petitioner next asserts that he is entitled to habeas relief because the trial court violated his confrontation rights by admitting Police Officer Steven Ford's testimony that he received information via an anonymous Crime Stoppers tip that the person who committed the crime was named "Mike" and that he "lived on Central." Dkt. No. 1, pg. 7 (Pg. ID 7). The Michigan Court of Appeals considered this claim on plain error review and denied relief. Dkt. No. 11-8, pgs. 3–4 (Pg. ID 965–66). The court found that the admission of the testimony was proper and did not violate the Confrontation Clause because it was offered to explain the subsequent investigative actions taken by the police and was not offered to prove

the truth of the matter asserted. *Putman*, 309 Mich. App. at 245–47; Dkt. No. 11-8, pg. 4 (Pg. ID 966).

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts.[2] The Confrontation Clause guarantees a criminal defendant the right to confront the witnesses against him. *Davis v. Alaska*, 415 U.S. 308, 315 (1973). In *Crawford v. Washington*, 541 U.S. 36, 54 (2004), the Supreme Court held that the testimonial statement of a witness who does not appear at trial is inadmissible unless the witness is unavailable to testify and the defendant has had a prior opportunity to cross-examine the witness. Testimonial statements include grand jury testimony, preliminary hearing testimony, and prior trial testimony, as well as statements made during police interrogations. *Id.* at 54. Testimonial statements do not include remarks made to family members or acquaintances, business records, or statements made in furtherance of a conspiracy. *Id.* at 51–52, 56; *U.S. v. Martinez*, 430 F.3d 317, 328–29 (6th Cir. 2005); *see also U.S. v. Stover*, 474 F.3d 904, 912–13 (6th Cir. 2007). The Confrontation Clause is not implicated, and thus need not be considered when non-testimonial hearsay is at issue. *Davis v. Washington*, 547 U.S. 813, 823–26 (2006); *Desai v. Booker*, 538 F.3d 424, 425–26 (6th Cir. 2008).

---

[2]The Court would reach the same result under a de novo standard of review.

In this case, the anonymous tip testimony was not offered as substantive evidence at trial. Rather, it was relevant and admissible under state law to explain the course of the police investigation and was not offered for the truth of the matter asserted. The Confrontation Clause "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." *Crawford*, 541 U.S. at 59, n.9; *see also Tennessee v. Street*, 471 U.S. 409, 414 (1985) ("The nonhearsay aspect [of an out-of-court statement] . . . raises no Confrontation Clause concerns."); *United States v. Powers*, 500 F.3d 500, 508 (6th Cir. 2007) ("testimony provided merely by way of background, or to explain simply why the Government commenced an investigation, is not offered for the truth of the matter asserted and, therefore, does not violate a defendant's Sixth Amendment rights"). Petitioner thus fails to establish a violation of his confrontation rights. Habeas relief is not warranted on this claim.

### 3. Effectiveness of Trial Counsel

Petitioner relatedly asserts that he is entitled to habeas relief because trial counsel was ineffective for failing to object to the witness oath, for failing to object to the admission of the anonymous tip testimony, and for failing to adequately function as counsel on his behalf at trial. Dkt. No. 1, pg. 8 (Pg. ID 8). Specifically, he asserts that counsel failed to call his brother as a witness, failed to properly challenge the prosecution's case and cross-examine witnesses, and failed to object

to testimony that the police obtained his name from the crime reporting system CRISNET. Dkt. No. 11-8, pg. 66 (Pg. ID 1028).

The Sixth Amendment guarantees a criminal defendant the right to the effective assistance of counsel. In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court set forth a two-prong test for determining whether a habeas petitioner has received ineffective assistance of counsel. First, a petitioner must prove that counsel's performance was deficient. This requires a showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687. Second, the petitioner must establish that counsel's deficient performance prejudiced the defense. Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal. *Id*.

To show a lawyer's performance fell below an objective standard of reasonableness is a high burden. There is a strong presumption that an attorney's conduct was reasonable. *McMullan v. Booker*, 761 F.3d 662, 672 (6th Cir. 2014). In other words, there is a wide range of reasonable professional assistance. *Davis v. Carpenter*, 798 F.3d 468, 473 (6th Cir. 2015). As to the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for the incompetence, the result of [the proceeding] would have been different." *Caudill v. Conover*, 881 F.3d 454, 463–64 (6th Cir. 2018). A reasonable probability is one that is sufficient to

undermine confidence in the outcome of the proceeding. *Id.* at 479. "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

The Supreme Court has confirmed that a federal court's consideration of ineffective assistance of counsel claims arising from state criminal proceedings is quite limited on habeas review due to the deference accorded trial attorneys and state appellate courts reviewing their performance. "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington*, 562 U.S. at 105 (internal and end citations omitted). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id*.

The Michigan Court of Appeals denied relief on these claims. The court ruled that Petitioner could not establish that counsel was ineffective for failing to object to the witness oaths or the anonymous tip testimony because objections would have been meritless and futile. *Putman*, 309 Mich. App. at 245, 247; Dkt. No. 11-8, pg. 3 (Pg. ID 965). The court ruled that Petitioner failed to show that counsel was ineffective for not calling Petitioner's brother as a witness because he failed to

establish the factual predicate for the claim and failed to show that he was deprived of a substantial (alibi) defense. *Putman*, 309 Mich. App. at 248–49. The court ruled that Petitioner failed to show that counsel was ineffective in cross-examining witnesses because the record showed that counsel thoroughly questioned the witnesses and he failed to show that additional inquiry would have affected the outcome given the victims' identifications of Petitioner as the perpetrator. *Id*. at 249–50. Lastly, the court ruled that Petitioner failed to show that counsel was ineffective for failing to object to the CRISNET testimony because his allegation was conclusory. *Id*. at 250–51.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. First, Petitioner fails to establish that trial counsel was ineffective for failing to object to the witness oath and the anonymous tip testimony. Given the Michigan Court of Appeals' ruling and this Court's ruling that those underlying claims lack merit, Petitioner cannot establish that counsel erred and/or that he was prejudiced by counsel's conduct. Counsel cannot be deemed deficient for failing to make a meritless argument or a futile objection. *See Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2014) ("Omitting meritless arguments is neither professionally unreasonable nor prejudicial."); *U.S. v. Steverson*, 230 F.3d 221, 225 (6th Cir. 2000).

Second, Petitioner fails to show that trial counsel was ineffective for not calling his brother as a witness at trial. Decisions as to what evidence to present and whether to call certain witnesses are presumed to be matters of trial strategy. When making strategic decisions, counsel's conduct must be reasonable. *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000); *see also Wiggins*, 539 U.S. at 522–23. The failure to call a known alibi witness can constitute ineffective assistance of counsel, *Bigelow v. Williams*, 367 F.3d 562, 570 (6th Cir. 2004), but counsel is not required to call a witness whose credibility is questionable. *Thurmond v. Carlton*, 489 F. App'x 834, 840 (6th Cir. 2012). The failure to call witnesses or present other evidence constitutes ineffective assistance of counsel only when it deprives a defendant of a substantial defense. *Chegwidden v. Kapture*, 92 F. App'x 309, 311 (6th Cir. 2004); *Hutchison v. Bell*, 303 F.3d 720, 749 (6th Cir. 2002).

In this case, Petitioner fails to demonstrate that counsel erred and/or that he was prejudiced by counsel's conduct, i.e., that he was deprived of a substantial defense. He fails to present an affidavit or other evidence to support his claim that his brother would have testified on his behalf, that his brother had his cell phone in the area at the time of the crime, or that his brother's testimony would have benefitted his defense. Conclusory allegations are insufficient to warrant federal habeas relief. *See Cross v. Stovall*, 238 F. App'x 32, 39–40 (6th Cir. 2007); *Workman v. Bell*, 178 F.3d 759, 771 (6th Cir. 1998) (conclusory allegations of

ineffective assistance of counsel do not justify habeas relief); *see also Washington v. Renico*, 455 F.3d 722, 733 (6th Cir. 2006) (bald assertions and conclusory allegations do not provide sufficient basis for an evidentiary hearing in habeas proceedings); *Tinsley v. Million*, 399 F.3d 796, 810 (6th Cir. 2005) (failure to provide affidavits from witnesses with favorable testimony was fatal to ineffective assistance of counsel claim). Moreover, Petitioner was able to present his alibi defense through the testimony of two other witnesses. He thus fails to establish that counsel was ineffective. Third, Petitioner fails to show that trial counsel was ineffective in challenging the prosecution's case and cross-examining witnesses. Contrary to Petitioner's assertions, the record demonstrates that counsel extensively questioned Donald Davie about his misidentification and argued the issue during closing arguments. *See* Dkt. No. 11-3, pgs. 70–104 (Pg. ID 462–96); Dkt. No. 11-5, pgs. 5–64 (Pg. ID 819–78). Counsel questioned Layman Giddings about potential bias and got him to admit that he never liked Petitioner. *See* Dkt. No. 11-3, pg. 186 (Pg. ID 578). Counsel also thoroughly cross-examined Stephen Lewis about his version of events, impeached him with a prior inconsistent statement, and highlighted those inconsistencies during closing arguments. *See* Dkt. No. 11-3, pgs. 210–16 (Pg. ID 602–08); Dkt. No. 11-5, pgs. 55–62 (Pg. ID 869–76).

Furthermore, the cross-examination of witnesses is generally a matter of trial strategy left to the professional discretion of counsel. *See Jackson v. Bradshaw*, 681

F.3d 753, 765 (6th Cir. 2012) (stating that "most cross-examinations can be improved but if that were the standard of constitutional effectiveness, few would be the counsel whose performance pass muster" and citing cases). Trial counsel's conduct in questioning the prosecution's witnesses and arguing the defense case was reasonable and well within the realm of professionally competent assistance. Petitioner fails to establish that trial counsel was ineffective.

Fourth, as to the CRISNET testimony, Petitioner neither alleges nor establishes facts which show that the admission of such testimony was improper such that counsel erred in failing to object. Conclusory allegations are insufficient to justify habeas relief. *See Cross*, 238 F. App'x at 39–40; *Workman*, 178 F.3d at 771; *see also Washington*, 455 F.3d at 733. The testimony was relevant and admissible to explain the police investigation. Consequently, Petitioner cannot establish that he was prejudiced by counsel's conduct. As noted, counsel cannot be ineffective for failing to make a meritless or futile objection. *See Coley*, 706 F.3d at 752; *Steverson*, 230 F.3d at 225. In sum, Petitioner fails to establish that trial counsel was ineffective under the *Strickland* standard. Habeas relief is not warranted on these claims.

### 4. Inconsistent Verdict

Lastly, Petitioner asserts that he is entitled to habeas relief because the jury reached an inconsistent verdict by convicting him of armed robbery and second-

degree murder while acquitting him of first-degree murder. Dkt. No. 1, pg. 10 (Pg. ID 10). The Michigan Court of Appeals denied relief on this claim finding that inconsistent verdicts are permissible under the law and that Petitioner did not allege or establish that the jurors were confused, that they misunderstood the instructions, or that they engaged in an impermissible compromise. *Putman*, 309 Mich. App. at 251; Dkt. No. 11-8, pg. 6 (Pg. ID 968).

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. First, to the extent that Petitioner alleges a violation of state law with respect to this issue, he is not entitled to habeas relief. As discussed, state courts are the final arbiters of state law and federal courts will not intervene in such matters. *Lewis*, 497 U.S. at 780; *Oviedo*, 809 F.2d at 328; *see also Bradshaw*, 546 U.S. at 76; *Sanford*, 288 F.3d at 860. Habeas relief does not lie for perceived errors of state law. *Estelle*, 502 U.S. at 67–68.

Second, with respect to federal law, Petitioner cites no Supreme Court authority, and the Court is aware of none, establishing that federal due process requires a jury to reach consistent verdicts. Rather, the Supreme Court has ruled that inconsistency in a verdict is an insufficient reason to set a verdict aside. *Harris v. Rivera*, 454 U.S. 339, 345 (1981); *United States v. Powell*, 469 U.S. 57, 58 (1984) ("a criminal defendant convicted by a jury on one count [may] not attack that

conviction because it [i]s inconsistent with the jury's verdict of acquittal on another count"); *see also U.S. v. Smith*, 182 F.3d 452, 457 (6th Cir.1999). Such is the case because an inconsistent verdict may favor a criminal defendant as well as a prosecutor. *Powell*, 469 U.S. at 65. "The fact that the inconsistency may be the result of lenity, coupled with the Government's inability to invoke review, suggests that inconsistent verdicts should not be reviewable." *Id*. at 66. Petitioner thus fails to state a claim upon which habeas relief may be granted as to this issue. Habeas relief is not warranted on this claim.

## V.    Conclusion

For the reasons stated, the Court concludes that Petitioner is not entitled to federal habeas relief on his claims. Accordingly, the Court **DENIES** and **DISMISSES WITH PREJUDICE** the petition for a writ of habeas corpus.

Before Petitioner may appeal the Court's decision, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). *Slack v. McDaniel*, 529 U.S. 473, 484–85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322,

327 (2003). Petitioner makes no such showing. Accordingly, the Court **DENIES** a certificate of appealability.

Lastly, the Court also **DENIES** Petitioner leave to proceed in forma pauperis on appeal as an appeal from this decision cannot be taken in good faith. *See* Fed. R. App. P. 24(a).

SO ORDERED.

Dated:       May 30, 2018

s/Gershwin A. Drain
Hon. Gershwin A. Drain
United States District Court Judge